**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

**GRECH, PACKER & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff* JOHN DOBBINS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOBBINS,<br><br>             Plaintiff,<br><br>       vs.<br><br>COUNTY OF RIVERSIDE; JOHN BARTO; and DOES 1-10, inclusive,<br><br>             Defendants. | CASE No.: 5:25-cv-01444-JGB-DTB<br><br>*District Judge Jesus G. Bernal*<br>*Magistrate Judge David T. Bristow*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY THE CASE**<br><br>Date:   November 24, 2025<br>Time:   9:00 a.m.<br>Crtrm.:  1 |

# TABLE OF CONTENTS

MEMORANDUM IN OPPOSITION ..................................................................... 1

I. INTRODUCTION .......................................................................................... 1

II. THE *YOUNGER* DOCTRINE DOES NOT APPLY TO THIS MATTER ................................................................................................................ 2

    A. Plaintiff Cannot Raise His Civil Rights Excessive Force Claims in A State Court Criminal Proceeding ...................................................... 2

    B. The Federal Court Action Would Not Enjoin the State Proceeding or Have the Effect of Doing So ............................................ 4

    C. There Is No Evidence That This Civil Rights Lawsuit Would Interfere with the Criminal Action............................................................ 5

    D. This Federal Civil Rights Action Should Continue as Scheduled .......... 9

III. THE *KEATING* DOCTRINE DOES NOT APPLY TO THIS MATTER ...... 10

    A. The Fact that Defendant *Could* Potentially Exercise their Fifth Amendment Right is an Insufficient Basis for a Stay............................ 11

    B. Plaintiff Has a Strong Interest In Proceeding Expeditiously with this Litigation, and Would Be Prejudiced By Delay ............................ 11

    C. This Civil Proceeding Would Impose No Burden on Defendants........ 12

    D. The Efficient Use of Judicial Resources Counsel Against Staying the Case .................................................................................................. 12

    E. The Interest of the Public in the Pending Civil Litigation Does Not Weigh in Favor of a Stay ............................................................... 13

IV. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*Beets v. Cnty. of Los Angeles*,
   200 Cal. App. 4th 916 (2011)...................................................................8, 9

*Beets v. Cnty. of Los Angeles*,
   669 F.3d 1038 (9th Cir. 2012)..................................................................6, 7

*Beets v. County of Los Angeles*,
   No. KC057667, 2013 WL 9768548 (Cal. Super. Feb. 21, 2013) ..................9

*Clinton v. Jones*,
   520 U.S. 681 (1997) ...............................................................................10, 12

*Cunningham v. Gates*,
   312 F.3d 1148 (9th Cir. 2002)..................................................................7, 8

*ESG Capital Partners LP v. Stratos*,
   22 F.Supp.3d 1042 (C.D. Cal. 2014)......................................................11, 12

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
   889 F.2d 899 (9th Cir. 1980).........................................................10, 11, 12, 13

*Gilbertson v. Albright*,
   381 F.3d 965 (9th Cir. 2004)........................................................................1

*Heck v. Humphrey*,
   512 U.S. 477 (1994) .....................................................................................7

*IBM v. Brown*,
   857 F.Supp 1384 (C.D. Cal 1994)...............................................................13

*Joseph v. City of San Jose*,
   No. 19-CV-01294-LHK, 2020 WL 1031899 (N.D. Cal. Mar. 3, 2020).......2, 4

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995)..................................................................passim

*Lindsey v. City of Pasadena*,
   No. CV-1608602-SJO (RAOx), 2017 WL 5891097 (C.D. Cal. Mar. 24, 2017)
   ....................................................................................................................12

*People v. Superior Court (Sparks)*,
   48 Cal.4th 1 (2010).......................................................................................9

*Sanrio, Inc. v. Ronnie Home Textile Inc.*,
   No. 2:14-CV-06369-RSWL, 2015 WL 1062035 (C.D. Cal. Mar. 10, 2015).13

*Sec. & Exch. Comm'n v. Braslau*,
   No. 14-01290-ODW (AJWX), 2015 WL 9591482 (C.D. Cal. Dec. 29, 2015)
   ....................................................................................................................13

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) .............................................................................. 7

*Smith v. Plummer*,
    458 F. App'x 642 (9th Cir. 2011) ....................................................................... 1

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
    720 F.Supp.805 (N.D. Cal. 1989) ..................................................................... 11

*Younger v. Harris*,
    401 U.S. 37 (1971) ............................................................................................. 1

**STATUTES**

28 U.S.C. §§471-82 ................................................................................................... 13

*Perez v. Cty. of Los Angeles*,
    No. CV 15-09585 SJO (FFMx), 2016 WL 10576622 (C.D. Cal. May 3, 2016) ................................................................................................................. 13

# MEMORANDUM IN OPPOSITION

## I. INTRODUCTION

This is a highly unusual situation officer-involved shooting situation. Yet undisputed that Eric Nourani initiated the attack on Deputy John Barto; Nourani bit a chunk of Deputy Barto's ear off; Nourani threatened to kill Deputy Barto; Nourani attempted to grab Deputy Barto's gun; Nourani is being charged with attempted murder on Deputy Barto; and undisputed in this civil rights action that Deputy Barto intentionally shot and killed Dobbins. Deputy Barto used excessive and unreasonable force against Dobbins, a small, unarmed woman, merely based on his claim that she kicked him. Now Defendants are attempting to delay justice for the wrongful killing of Dobbins, in violation of the Fourth Amendment to the United States Constitution, because the District Attorney's Office decided to file charges against Nourani for the murder of Dobbins. Defendants wrongfully label Dobbins, a decedent, as Nourani's "co-conspirator," without charges being filed or a criminal trial, and wrongfully request the Court to expand both the *Keating* Doctrine and the *Younger* Doctrine, putting an unreasonable amount of power in the hands of law enforcement and the state officials to dictate the calendar of this federal district court and delay justice for a grieving family. On these facts, *Younger v. Harris*, 401 U.S. 37 (1971) does not apply and the *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) factors are not met.

Plaintiff does not dispute that there is an ongoing criminal proceeding against Nourani or that the state's interest in enforcing its laws is important. Plaintiff contends, however, that he is precluded from litigating his §1983 claims on behalf of his deceased daughter in the criminal proceedings, and that the present action for money damages will not enjoin the state proceedings. *See Smith v. Plummer*, 458 F. App'x 642, 643 (9th Cir. 2011); *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004). In fact, §1983 cases are litigated all the time with pending prosecutions. Finally, it is not practical and not in the interest of justice to stay the current civil

rights matter, where Nourani is not a plaintiff or defendant. The Court should not allow district attorney decisions to dictate its calendar, especially when there is no indication as to how long the criminal matter may take to resolve. Therefore, the Court should deny the Motion and enforce the current scheduling order.

## II. THE *YOUNGER* DOCTRINE DOES NOT APPLY TO THIS MATTER

The *Younger* abstention doctrine only applies if: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *Joseph v. City of San Jose*, No. 19-CV-01294-LHK, 2020 WL 1031899, at *12 (N.D. Cal. Mar. 3, 2020) (citation omitted). Because these elements are not met, abstention does not apply to this matter.

### A. Plaintiff Cannot Raise His Civil Rights Excessive Force Claims in A State Court Criminal Proceeding

In its analysis, the Court must determine whether Plaintiff is barred from litigating federal constitutional issues in the criminal proceedings. Plaintiff here is undeniably precluded and, therefore, *Younger* does not apply. Nourani is charged with a violation of Penal Code §187 (murder), despite him not being the perpetrator of the murder, based on a theory that Nourani and Dobbins were co-conspirators in the attempted murder of Deputy Barto (i.e., felony murder rule). This is far from the truth. Conspiracy requires a defendant to be charged with Penal Code §182 (see Cal. Crim. No. 415); Nourani is not being charged with §182 and Dobbins was not charged with anything. Conspiracy requires the prosecution to prove (1) that Dobbins intended to agree and did actually make an agreement with Nourani to commit murder on Deputy Barto while she was being chased down by Deputy Barto and/or while she attempted to prevent Deputy Barto from killing Nourani with a two-handed choke; (2) that at the time of the agreement, the defendant intended that

one of them would commit murder on Deputy Barto; and (3) that Dobbins committed an overt act to accomplish murder. (Cal. Crim. No. 415). Defendants present no evidence that any of the conspiracy requirements are met. But importantly, Plaintiff is precluded from presenting evidence in the criminal matter as to of the fact that Dobbins did not make an agreement with Nourani; was not in agreement to kill Deputy Barto; and in fact, acted as though no agreement to murder the deputy was made.

Secondly, Defendants' argument that if Nourani is found guilty of attempted murder on a police officer in violation of Penal Code §663(e), that somehow Nourani's attempted murder against Deputy Barto while Deputy Barto was acting in the lawful performance of his duties by taking Nourani into custody, would lead to the legal conclusion that Deputy Barto was in the lawful performance of his duties when he shot and killed Dobbins instead of Nourani. Again, Plaintiff is precluded from arguing before the criminal jury that there is a difference between the deputy's *potential* lawful conduct toward Nourani and the deputy's *obvious unlawful* conduct toward Dobbins. Without Dobbins' interests being represented in the criminal trial, an impassioned criminal jury may seek to punish Nourani for his conduct without consideration of whether the deputy was acting unlawfully when he shot Dobbins.

In the criminal matter, Plaintiff will have no opportunity to challenge the constitutionality of the use of force against Dobbins; no opportunity to show that Dobbins was not in agreement with Nourani; no opportunity to show that Dobbins was not intent on attempting to kill Deputy Barto; and no opportunity to show a jury that the shooting of his daughter was not in the lawful performance of Deputy Barto's duties even if taking Nourani into custody was. Indeed, Plaintiff has no role to play whatsoever in Nourani's criminal proceedings. Plaintiff will be deprived of the opportunity to litigate his important civil rights claims in the criminal case. Plaintiff also will be deprived of litigating his *Monell* claims in the criminal case. In essence, the lack of a connection between the facts underlying the charges and the

facts underlying the uses of force makes excessive force and *Monell* claims irrelevant in the State proceedings and effectively bars Plaintiff from raising his constitutional claims in state court. Defendant has not met this factor for abstention.

### B. The Federal Court Action Would Not Enjoin the State Proceeding or Have the Effect of Doing So

Defendants likewise cannot establish that this federal court action would enjoin the state proceeding or have the effect of doing so. Plaintiff's federal claims under §1983 and Fourth Amendment jurisprudence for money damages has no bearing on whether the state can establish a criminal violation for *Nourani's* conduct that preceded the Constitutional violations. Further, Defendants' argument that this civil rights matter would interfere with the state court proceedings is conclusory, speculative, and unpersuasive. There is no support in the record that this matter will interfere with the state criminal proceedings. *Younger* abstention does not apply.

In *Joseph v. City of San Jose*, 2020 WL 1031899, at *12, the Court held that it need not abstain from adjudicating plaintiffs' claims for money damages for Fourth Amendment violations. The Court noted that, "unlike a determination that the civil proceeding itself is constitutionally deficient, a determination that a Fourth Amendment violation occurred and that the [plaintiffs] are entitled to monetary damages would not have the same practical effect as a declaration or injunction on pending state proceedings." *Id.* at *19. The same applies here. A determination that Plaintiff is entitled to money damages for excessive force used on his daughter, who is not a criminal defendant but deceased, and that the County is liable under *Monell*, would in no way have the same practical effect as a declaration or injunction on pending state proceedings. The state is free to pursue its action *against Nourani* in state court without concern for being enjoined from doing so by the instant lawsuit. In fact, despite a jury finding here that Deputy Barto used excessive force against Dobbins, the criminal jury could still find that Deputy Barto was in the lawful

performance of his duties *when he was taking Nourani into custody*. Thus, this factor likewise does not compel this Court to abstain.

### C. There Is No Evidence That This Civil Rights Lawsuit Would Interfere with the Criminal Action

This matter cannot be stayed by Defendants' speculative argument that "a civil case has the potential to interfere with a criminal case." (Mot. at 6:3-4). As an initial matter, Defendants lack standing to make this argument. There is no indication that Defendants in this case represent the District Attorney's Office, nor did the DA intervene in this case. Indeed, in the many decades of representing victims of officer involved shootings in California, Plaintiff's counsel is unaware of any time in which the DA has ever intervened in a shooting case and asked for a stay on the basis that an ongoing civil rights litigation would somehow interfere with the criminal proceeding. Defendants are essentially asking the Court to create a rule whereby a stay to every civil rights litigation should be granted if the DA merely files particular charges even if there is no likelihood of a successful prosecution. There is no basis in the law to create such a rule.

On the other hand, a stay on the basis requested by Defendants would set a dangerous precedent. Here, agents of the County shot and killed a young woman; agents of the County investigated the shooting; agents of the County are prosecuting Nourani; and now the County seeks to control civil oversight of arguably the most extreme government invasion on civil liberty, the taking of a human life. A stay would indicate creation of a rule that prejudices civil rights plaintiffs because it would permit government defendants, who typically have most of the evidence and know the identities of witnesses, to stall every civil rights proceeding by prolonging their own investigations and thereby deny justice to victims. This not only adversely affects civil litigants, but it also affects the operation of the federal court.

Nourani's potential criminal conviction does not bar Plaintiff's claims. It is highly speculative that Nourani will be convicted of murder. Nevertheless, *Beets v.*

*Cnty. of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012) does not bar this matter. In *Beets*, a deputy shot and killed Glenn Patrick Rose. Thereafter, a Ms. Morales was convicted on several counts including aiding and abetting in the assault on a peace officer with a deadly weapon, which the defendants argued *Heck* barred plaintiffs from showing that the deputy used excessive force. *Id*. at 1040. There, the criminal jury found that the deputy did not use excessive force and, based on the specific conviction of aiding and abetting found that Morales was an accomplice to Rose. *Id*. There, Rose and Morales fled from deputies in a stolen vehicle and as deputies entered the vehicle to make the arrest, Rose and Morales fought back, and Rose drove the vehicle into a patrol vehicle possibly injuring officers on the other side, then was shot and killed. *Id*.

Fundamentally, there, Subject 1 was Rose, the deceased assailant driving the vehicle; and Subject 2 was Morales, the passenger. Subject 2 was <u>convicted of aiding and abetting</u> based on Subject 1's conduct. There, the deputy conduct in shooting Rose was in the lawful performance of his duties because Rose was driving a vehicle toward officers. There, the jury was specifically instructed that criminal culpability rested on a finding that the use of force was not excessive – excessive force had to be litigated there. Here the facts are distinguishable. Here, Subject 1 is Nourani the currently presumed innocent assailant; Subject 2 is Dobbins, the deceased who is not on trial either criminally or civilly; and Subject 3 is Deputy Barto, the assailant who shot and killed Dobbins. Nourani is not being charged with aiding and abetting Dobbins. Nourani is not being charged with conspiracy. Here, Deputy Barto was not in the lawful performance of his duties when he shot Dobbins regardless of whether he may be found to be in the lawful performance of his duties when he was arresting Nourani. There is no indication that excessive force against Dobbins will be litigated in Nourani's criminal trial and to the extent that it is, Plaintiff will not have an opportunity to be heard.

A *Heck* bar only exists where the criminal conviction arising out of the same facts is fundamentally inconsistent with the unlawful conduct alleged under §1983. See *Id*. at 1042; *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005). In *Beets,* the Court stated that it could not separate the officers' response to the criminal from the criminal defendant's activities. See *Id*. at 1043-44. This ruling should not be expanded to unite the Deputy's response to Dobbins (clearly excessive) from the criminal defendant's (Nourani) activities and potential convictions. A criminal conviction of *Nourani* would likely *Heck* bar *Nourani* from bringing a §1983 action against Deputy Barto because it would require a finding that Deputy Barto was lawful in his conduct toward Nourani. Such a finding would not imply that everything Deputy Barto did that day was lawful - - it would only necessarily imply that the officer's conduct towards Nourani was lawful. In order for Dobbins to be implicated in Nourani's conduct, Nourani would have to be convicted of conspiracy, or aiding and abetting, with which he is not even charged.

In *Beets*, Morales was convicted of assault on a peace officer which was the catalyst for the deadly force reaction by the deputy, and by that conviction, the jury found that the deputy's force was not excessive. *Id*. at 1045. Again, here, the Nourani criminal jury will be asked to determine if Nourani was attempting to kill the Deputy and whether the Deputy's conduct toward Nourani was lawful – not whether the Deputy's conduct toward Dobbins was lawful. A *Heck* bar only applies if the subsequent §1983 suit would necessarily imply the invalidity of the earlier sentence. *Id*. at 1046; *Heck v, Humphrey*, 512 U.S. 477, 487 (1994). Based on the facts of this case, even a felony murder conviction against Nourani is not "necessarily" invalidated by a finding the officer used excessive force against Dobbins.

Further, the *Beets* Court relied on its ruling in *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), where the Court rejected a separation between the criminal defendant's activities and the officers' conduct. In that case, Cunningham was

convicted of murder after a shootout with police left one of his companions dead. Based on the facts of that case, the Court determined that there was no break in Cunningham's conduct and the police response claimed to be excessive. *Id*. at 1155. Further, based on the conviction of felony murder, the jury concluded that the police response was a natural consequence of Cunningham's conduct. *Id*. Thus, the Court held Cunningham's claims were barred.

There, the family of the decedent also sued for excessive force leading to the death. On that issue, the Court found, "the circumstances of Cunningham's trial do not suggest that the Solys could expect to be bound by the results. The jury's verdict rested on Cunningham's actions, not Soly's. It was Cunningham's provocation, not Soly's, that was the focus of Cunningham's trial. And in convicting Cunningham of felony murder, the jury necessarily concluded that he was a cause, not the cause, of Soly's death. Thus, Cunningham's conviction does not on its face foreclose the possibility that the police also contributed to Soly's death. *Id.* at 1156, as amended on denial of reh'g (Jan. 14, 2003.)

Plaintiff's claims that he is entitled to proceed to trial based on the Deputy's excessive force contributing to his daughter's death is analogous to Soly's family's claims, not Cunningham's claims. Here, as in *Cunningham*, a guilty verdict against Nourani would not conclusively establish lawful officer conduct as to Dobbins. Regardless of Nourani's actions, a conviction would not on its face foreclose that the Deputy's own conduct contributed to decedent's death. Thus, Plaintiff's claims would not be barred by a criminal conviction against Nourani.

Importantly, there was a parallel state court appeal in the *Beets* action. There it was pointed out that the prosecution's theory toward Morales was not that she was the direct perpetrator of the assault but that she aided and abetted Rose, the perpetrator, in the assault. *Beets v. Cnty. of Los Angeles*, 200 Cal. App. 4th 916, 920 (2011). The State of California Court of Appeals found that the civil rights lawsuit was not barred by Morales' conviction. *Id*. at 924. "The Heck rule came into being

because the Supreme Court wanted to prevent defendants' collateral attacks on their convictions through the means of a civil lawsuit. *Heck*, *Yount*, and the California cases applying the rule all involve convicted defendants whose subsequent civil lawsuits would challenge their own convictions." *Id*. There, it was not the case that Rose was convicted of ADW on Deputy Winter and now seeks to profit from his own bad act by bringing an excessive force lawsuit. Nor was it the case that Morales brought an excessive force lawsuit after being convicted. These would be cases in which the *Heck*/*Yount* bar would likely apply. *Id*. at 926.

  Similarly, here, it is not Dobbins who is at risk of being convicted of attempted murder and now seeks to profit from that bad conduct. It is not Nourani who is bringing an excessive force lawsuit after being convicted. Thus, *Heck* does not apply. *See Id*. ("Given our justice system's tolerance of inconsistent results for different participants in a crime, we do not agree with respondents' claim that a judgment in favor of appellants here would necessarily lead to habeas corpus relief for Morales") (*citing People v. Superior Court (Sparks)*, 48 Cal.4th 1, 5, 13 (2010) ("the rule of consistency is a vestige of the past with no continuing validity…. If substantial evidence supports a jury verdict as to one defendant, that verdict may stand despite an apparently inconsistent verdict as to another defendant")).

  After being remanded to the trial court, summary judgment was denied. *Beets v. County of Los Angeles*, No. KC057667, 2013 WL 9768548, at *1 (Cal. Super. Feb. 21, 2013). After further delay in justice, on October 21, 2025, the *Beets* plaintiffs went to trial on their battery and negligence causes of action, where a jury found that Deputy Winter used unreasonable force against Rose, was negligent, and awarded money damages to plaintiffs. The Morales conviction stood.

  **D. This Federal Civil Rights Action Should Continue as Scheduled**

  Granting Defendants' motion would unnecessarily allow the state court proceeding to interfere with this Court's scheduling order. A stay on the basis requested by Defendants would set a new dangerous precedent. A stay would

indicate expansion of the doctrine that would prevent civil rights plaintiffs from timely investigating and prosecuting cases merely because certain charges are filed in a criminal action against a third party to an officer's use of excessive force.

Further, the criminal case could go on for years. Especially because it involves a homicide, it could have several appeals that could extend the criminal case for several additional years. Additionally, even if there is a conviction sometime in the future, Nourani may be in custody outside this district making him difficult to depose and testify here if necessary. By then, witnesses in this matter may have relocated, their memories assuredly will fade, and Plaintiff's desire for justice would be unfairly delayed for an indefinite period. Finally, the Court has an interest in clearing its docket and of maintaining judicial economy, which is frustrated by a delay, and the public has an interest in the speedy resolution of civil rights matters.

It is not practical and not in the best interest of justice to stay this civil rights matter pending resolution of the criminal case. Nevertheless, Defendant County has not demonstrated that a stay is warranted. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.")

### III.   THE *KEATING* DOCTRINE DOES NOT APPLY TO THIS MATTER

"[A] court may decide in its discretion to stay civil proceedings...when the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made in light of the particular circumstances and compelling interests involved in the case." *Id*. (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1980) (*Molinaro*)). Courts are therefore instructed to consider "the extent to which the defendant's Fifth Amendment rights are implicated." *Molinaro*, 889 F.2d at 902. In addition, courts "should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any

particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 324-25 (*citing Molinaro*, 889 F.2d at 903). Based on the application of these factors, the interests of justice weigh against a stay of this matter.

### A. The Fact that Defendant *Could* Potentially Exercise their Fifth Amendment Right is an Insufficient Basis for a Stay

Plaintiff understands that "there is a strong case in favor of a stay after a grand jury returns a criminal indictment and where there is a large degree of overlap between the facts involved in both" civil and criminal cases. *Molinaro*, 889 F.2d at 903. However, Nourani is not a party to the civil case. His testimony is not necessary – and the entire encounter is captured on the Deputy's body-worn camera video and surveillance. No evidence was presented that Nourani would invoke his Fifth Amendment right even if subpoenaed in this matter. To the contrary, Nourani may waive the right to testify that his then girlfriend who was killed right in front of him, did not conspire with him to kill the Deputy. Thus, Defendants have failed to demonstrate that the present civil litigation will substantially interfere with Nourani's Fifth Amendment rights. There is no need to stay the entire case – Defendants' Motion should be denied.

### B. Plaintiff Has a Strong Interest In Proceeding Expeditiously with this Litigation, and Would Be Prejudiced By Delay

Courts uniformly recognize that a "civil plaintiff has an interest in having her case resolved quickly." *ESG Capital Partners LP v. Stratos*, 22 F.Supp.3d 1042, 1046 (C.D. Cal. 2014). Plaintiffs have a significant interest in obtaining resolution of their claims and receiving compensation if they prove they are entitled to it. *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F.Supp.805, 809 (N.D. Cal. 1989) ("Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to

seek vindication or redress for indefinite periods of time on end."). Thus, Plaintiff is necessarily prejudiced by the delay caused by a stay.

### C. This Civil Proceeding Would Impose No Burden on Defendants

Courts have found that even when a Defendant's Fifth Amendment rights are implicated, this factor does not support granting a stay unless the defendant can show other "compelling factors as described in Keating." *ESG Capital Partners*, 22 F.Supp.3d at 1046; *see also Lindsey v. City of Pasadena*, No. CV-1608602-SJO (RAOx), 2017 WL 5891097, at *4 (C.D. Cal. Mar. 24, 2017) (Otero, J.). Indeed, as cited above, "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Keating*, 45 F.3d at 326. As such, "[t]he Ninth Circuit has found that where a defendant has had adequate time to prepare for a related civil trial, the burden on the defendant is substantially diminished." *Id.* at 325.

Here, the Plaintiff's, Decedent's, Defendants', other witnesses', and investigators' Fifth Amendment rights are not being implicated. Defendants have not sufficiently demonstrated that the denial of a stay would create a significant and undue burden. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need."). Moreover, Defendants have submitted nothing to establish that they would suffer any prejudice from denial of a stay. They did not submit a declaration or offer any evidence at all in regards to this factor. This, too, weighs against a stay.

### D. The Efficient Use of Judicial Resources Counsel Against Staying the Case

Judicial efficiency likewise weights against issuing a stay in this case since the district court "ha[s] an interest in clearing its docket." *Molinaro*, 889 F.2d at 903. Consequently, "[t]his factor usually weighs against granting a stay...." *Sec. &*

*Exch. Comm'n v. Braslau*, No. 14-01290-ODW (AJWX), 2015 WL 9591482, at *4 (C.D. Cal. Dec. 29, 2015); *see also Sanrio, Inc. v. Ronnie Home Textile Inc.*, No. 2:14-CV-06369-RSWL, 2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015). Indeed, "a policy of issuing stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." *IBM v. Brown*, 857 F.Supp 1384, 1392 (C.D. Cal 1994).

Again, Defendants offer nothing to change this analysis. In fact, Defendants cannot even provide an estimate for the length of the Nourani criminal proceeding. Here, Defendants offer no concrete reason to conclude that the alleged criminal action will in any meaningful way obstruct the resolution of this action. Thus, this factor weighs against a stay.

### E. The Interest of the Public in the Pending Civil Litigation Does Not Weigh in Favor of a Stay

The public has an interest in the "speedy resolution" of this action. *Keating*, 45 F.3d at 325; *see also Molinaro*, 889 F.2d at 903 (finding that the interest of the public "would be frustrated by further delay."). The public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990. See 28 U.S.C. §§471-82. A stay would clearly impair that interest. *Perez v. Cty. of Los Angeles*, No. CV 15-09585 SJO (FFMx), 2016 WL 10576622, at 4* (C.D. Cal. May 3, 2016).

The public's interest in ensuring that police officers who use excessive and unreasonable deadly force are held to answer is fulfilled by civil plaintiffs. Although the public has a countervailing interest in ensuring that the criminal process can proceed untainted by civil litigation, this interest is minimal where, as here, proceeding on Plaintiff's civil rights claims will in no way interfere with the third-party prosecution of Nourani. Accordingly, this factor weighs against staying the instant action.

## IV. CONCLUSION

Based on the foregoing, *Younger*, *Keating*, and *Heck* do not apply to this matter and do not require a stay the instant action. The Court should deny Defendant's motion to stay and instruct that the parties continue with the deadlines set in the scheduling order.

Respectfully submitted,

DATED: November 3, 2025

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER & HANKS**

By: */s/      Marcel F. Sincich*
　　　Marcel F. Sincich
　　　Trenton C. Packer
　　　*Attorneys for Plaintiff*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff certifies that this brief contains 4,602 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

DATED: November 3, 2025

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER & HANKS**

By: */s/      Marcel F. Sincich*
Marcel F. Sincich
Trenton C. Packer
*Attorneys for Plaintiff*